CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
4/17/19
JULIA C. DUDLEY, CLERK
BY:   s/ K. DOTSON
     DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| ADAM NELSON, on Behalf of Himself and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>TIDAL BASIN HOLDING, INC. and VANGUARD EMERGENCY MANAGEMENT,<br><br>    Defendants. | §<br>§<br>§<br>§ CIVIL ACTION NO. 5:19cv00030<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**PLAINTIFF'S ORIGINAL COLLECTIVE ACTION COMPLAINT**

## I.   SUMMARY

1.   Plaintiff Adam Nelson and the employees he seeks to represent ("Class Members") are current and former workers classified as independent contractors by Defendants Tidal Basin Holdings, Inc. and Vanguard Emergency Management ("Defendants"). Defendants knowingly and deliberately failed to compensate Plaintiff and the Class Members at the rate of time and one half their regular rate of pay for all hours worked over 40 in a workweek as required under the Fair Labor Standards Act ("FLSA").

2.   Defendants violated the FLSA by misclassifying the Plaintiff and Class Members as independent contractors instead of as employees. Consequently, Defendants' compensation policy violates the FLSA's mandate that non-exempt employees, such as the Plaintiff and Class Members, be compensated at one and one-half times their regular rate of pay for each hour worked over forty (40) in a week.

3. Plaintiff seeks to recover, on behalf of himself and the Class Members, all unpaid wages and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b).

4. Plaintiff also prays that the class of similarly situated workers be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt into this litigation.

## II. SUBJECT MATTER JURISDICTION AND VENUE

5. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b).

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants does business in this District and the decision to pay the Plaintiff and Class Members in the illegal manner asserted in this Complaint was made in this District.

## III. PARTIES AND PERSONAL JURISDICTION

7. Plaintiff Adam Nelson is an individual currently residing in Cypress, Texas. Plaintiff's written consent to this action is attached hereto as Exhibit "A."

8. The Class Members are all current and former "Housing Inspectors" and all workers in substantially similar positions classified as independent contractors during the three year period prior to the filing of this Complaint to the present.

9. Defendant Tidal Basin Holdings, Inc. is a Virginia for-profit corporation. Defendant may be served process by serving its registered agent the Corporation Service Company, 100 Shockoe Slip, 2nd Floor, Richmond, VA 23219.

10. Defendant Vanguard Emergency Management is a company with its headquarters in Virginia. Defendant may be served process by serving its registered agent the Corporation Service Company, 100 Shockoe Slip, 2nd Floor, Richmond, VA 23219.

11. This Court has personal jurisdiction over the Defendants because Defendants are Virginia companies formed under the laws of Virginia with their headquarters in Virginia.

### IV. FACTS

12. Vanguard Emergency Management is a company owned, controlled, and operated by Tidal Basin Holdings, Inc. Vanguard Emergency Management provides housing inspection services for those individuals whose homes have been damaged by a natural disaster. As its website states: "Vanguard Emergency Management (Vanguard EM or VEM) is committed to providing complete and compliant Disaster Home Inspections under FEMA's Housing Inspection Services (HIS) Program. Vanguard EM's committed staff, in partnership with our cadre of Independent Contractors performing disaster housing inspections, provide a quality service to ensure disaster survivors receive the assistance they need in an expedient manner."

13. Defendants are paid by the federal government as part of FEMA's disaster relief program. Defendants have provided house inspection services across the country, including in California, Texas, Florida, and Puerto Rico.

14. To provide these home inspection services, Defendants employ housing inspectors.

15. These housing inspectors have performed services across the country, including in California, Texas, Florida, and Louisiana.

16. Plaintiff worked for Defendants as a housing inspector from 2016 to December 2018. Plaintiff worked for Defendant in Louisiana, Texas, and Florida.

17. As housing inspectors, Plaintiff and the Class Members travelled to different locations affected by natural disasters. They inspected homes to determine the amount of damage caused by the natural disasters.

18. As part of the inspection process, the Plaintiff and Class Members were required to complete a standardized inspection form created by Defendants.

19. For their work, they were paid a pre-established rate per home inspected. As stated on Vanguard Emergency Management's website: "Novice Inspectors (0- 500 inspections) are paid $35 per inspection, intermediate inspectors (501-2500 verified inspections) are paid $39 per inspection, Advanced (2501+ verified inspections) are paid $45 per inspection. All inspectors are reimbursed for allowable field expenses (rental cars, airfare, lodging, mileage if not using rental car) and will receive the GSA per diem rate daily while deployed."

20. They were not allowed to negotiate these amounts. Instead, their pay was offered on a "take it or leave it" basis.

21. Further, Defendants reimbursed the Plaintiff and Class Members for travel expenses. Vanguard Emergency Management's website states as follows: "Reimbursable Travel Expenses:

- Airfare
- Lodging
- POV mileage
- Rail/Taxis/Public Transportation
- Laundry: Up to $15 on trips exceeding 14 days
- Rental Car
- Fuel for rental car

4

- Tolls/Parking

- National Travel transaction fees: Booking fees for airfare, hotel & rental car

- Meals: Housing inspectors will be compensated for meals and incidental expenses. The amount will be in accordance with the federal GSA rate schedule for the location of performance."

22. When inspecting homes, the Plaintiff and Class Members were required to follow strict policies and procedures set by Defendants. If they did not perform an inspection according to Defendant's policies and procedures, Defendants would punish the housing inspectors by not paying them for the inspection.

23. Prior to performing their work for Defendants, the Plaintiff and Class Members were required to complete an application and submit to a background check. If they met Defendants' requirements, they were hired.

24. Further, before they could work for Defendants, the Plaintiff and Class Members were required to complete Defendants' training program. Defendants operate "Vanguard EM University" which provides both online and in-person training.

25. After completing the application, passing the background check, and completing Defendants' training, Defendants assigned the Plaintiff and Class Members various homes to inspect across the country.

26. Defendants also provided standard operating procedures to the Plaintiff and Class Members that they were required to follow.

27. While working in the field, the Plaintiff and Class Members were subject to Defendants' control. Defendants would review their work, make corrections, and issue instructions.

28. Defendants also assigned a "Field Supervisor" to the Plaintiff and Class Members to oversee their work.

29. Defendants would also review their performance and reward those housing inspectors that performed better than others. The Vanguard Emergency Management's website states that the performance of the housing inspectors "is reviewed and taken into consideration with regards to the amount of inspections assigned to him/her over the course of a deployment and status for future disasters. **The better the CCOR rate, the better the deployment status.**"

30. Plaintiff and the Class Members worked long hours, often through the night, to perform their work.

31. Plaintiff and the Class Members routinely worked in excess of 40 hours each week.

32. Plaintiff and the Class Members were non-exempt employees.

33. Plaintiff and the Class Members were paid on a piece rate basis where their pay depended upon the number of houses inspected.

34. However, Defendants misclassified Plaintiff and the Class Members as independent contractors instead of as employees.

35. As a result, Plaintiff and the Class Members were not paid overtime wages when they worked more than 40 hours in a week.

36. Plaintiff and the Class Members were never independent contractors, but were at all times employees of Defendants. Defendants hired/fired, issued pay, supervised, directed, disciplined, scheduled and performed all other duties generally associated with that of an employer with regard to Plaintiff and Class Members.

37. In addition, Defendants instructed Plaintiff and the Class Members about when, where, and how they were to perform their work – including assigning the geographic locations to work and the houses inspect.

38. Moreover, the following conduct further demonstrates that Defendants acted as an employer with respect to Plaintiff and the Class Members:

    a. Defendants paid Plaintiff and Class Members a non-negotiable piece rate that Defendants unilaterally set;

    b. Plaintiff and Class Members had no control over what jobsite they may be assigned to;

    c. Defendants required Plaintiff and Class Members to request time off in advance and have that time off preapproved;

    d. Defendants issued work orders to Plaintiff and Class Members;

    e. Defendants assigned Plaintiff and Class Members so much work that, as a practical matter, prevented them from working for any other company;

    f. Plaintiff and Class Members' services were integrated into Defendants' operations;

    g. Plaintiff and Class Members worked for Defendants for long and indefinite periods of time, often years, as is common with employees;

    h. Defendants had specific rules that Plaintiff and Class Members were required to follow when performing their jobs; and

    i. Defendants maintained the right to discharge Plaintiff and Class Members at will.

39. Furthermore, the degree of investment Plaintiff and Class Members made to perform their work pales in comparison to the expenses Defendants incurred. Defendants invested significant sums in their facilities, website, employees, and other investments.

40. Plaintiff and the Class Members were the workforce without which Defendants could not provide their services. Plaintiff and the Class Members were not independent business owners, but were dependent upon the work of Defendants to earn income.

41. Despite these facts, Defendants improperly classified Plaintiff and Class Members as independent contractors and not employees.

42. Moreover, none of the white collar exemptions found in 29 U.S.C. § 213(a)(1) are applicable to the Plaintiff and the Class Members because they were not paid on a "salary" basis or "fee" basis as required under in 29 U.S.C. § 213(a)(1).

43. Additionally, none of the other exemptions found under the FLSA are applicable to the Plaintiff or the Class Members.

44. Defendants' method of paying the Plaintiff and Class Members in violation of the FLSA was willful and was not based on a good faith and reasonable belief that their conduct complied with the FLSA.

45. Defendants knew about the requirements to pay overtime but chose not to pay overtime to the Plaintiff and Class Members.

## V.    CAUSES OF ACTION

COUNT I
VIOLATION OF THE FAIR LABOR STANDARDS ACT
FAILURE TO PAY OVERTIME
(COLLECTIVE ACTION)

46. Plaintiff incorporates all allegations contained in the foregoing paragraphs.

47. This count arises from Defendants' violation of the FLSA for their failure to pay Plaintiff and Class Members overtime compensation.

48. At all material times, Defendants have been employers within the meaning of 3(d) of the FLSA. 29 U.S.C. § 203(d).

49. At all material times, Defendants have been enterprises within the meaning of 3(r) of the FLSA. 29 U.S.C. § 203(r).

50. At all material times, Defendants have been enterprises in commerce or in the production of goods for commerce within the meaning of the 3(s)(1) of the FLSA because Defendants have had and continue to have employees engaged in commerce. 29 U.S.C. § 203(s)(1).

51. Defendants have had an annual gross business volume of not less than $500,000 a year for the three years preceding the filing of this complaint.

52. At all material times, Plaintiff and Class Members were employees who engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.

53. The FLSA requires that covered employees be compensated for all hours worked in excess of forty hours per week at a rate not less than one and one-half times the regular rate at which he is employed. *See* 29 U.S.C. § 207(a)(1).

54. Defendants' compensation scheme applicable to Plaintiff and the Class Members failed to comply with 29 U.S.C. § 207(a)(1).

55. Defendants knowingly failed to compensate Plaintiff and the Class Members at a rate of one and one-half times their regular hourly wage for hours worked in excess of 40 hours per week, in violation of 29 U.S.C. § 207(a)(1).

56. During all relevant times, Plaintiff and the Class Members were covered employees entitled to the above-described FLSA protections.

57. In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions. Defendants' misclassification was not by accident, but a well thought out scheme to reduce their labor costs.

## VII.   COLLECTIVE ACTION ALLEGATIONS

58.   As part of their regular business practices, Defendants have engaged in a pattern, practice, or policy of violating the FLSA on a class wide basis, as described above.

59.   Plaintiff brings this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all current and former "housing inspectors" and all workers in substantially similar positions classified as independent contractors during the three year period prior to the filing of this Complaint to the present.

60.   Although Defendants permitted and/or required Class Members to work in excess of forty (40) hours per workweek, Defendants have denied them full compensation for their hours worked over forty.

61.   Plaintiff has actual knowledge, through observations of and conversations with his co-workers, that a class of similarly situated Class Members exists which has been subjected to Defendants' policy of not paying the overtime rate for all hours worked over forty.  Plaintiff worked with other employees and attended training with other employees.

62.   The Class Members are similarly situated to Plaintiff in that they all performed similar duties, were paid on a piece rate basis, and were denied overtime pay.

63.   Defendants' failure to pay overtime at the rates required by the FLSA results from generally applicable policies or practices and does not depend on personal circumstances of individual Class Members.

64.   The experience of Plaintiff, with respect to his employment classification and pay, is typical of other workers across Defendants' business.

65. The specific job titles or precise job responsibilities of each Class Member does not foreclose collective treatment because liability in this case relates to Defendants' decision to misclassify their employees as independent contractors.

66. Class Members regularly work or have worked in excess of forty (40) hours during a workweek.

67. Class Members are not exempt from receiving overtime pay under the FLSA.

68. Like Plaintiff, all Class Members, irrespective of their particular job requirements, are entitled to receive overtime compensation for hours worked in excess of forty during a workweek.

69. As such, Class Members are similar to Plaintiff in terms of relevant job duties, pay structure, misclassification as independent contractors and/or the denial of overtime pay.

70. The names and addresses of the Class Members are available from Defendants' records. To the extent required by law, notice will be provided to these individuals by first class mail and electronic mail or by the use of techniques and a form of notice similar to those customarily used in representative actions.

71. Although the exact amount of damages may vary among the individual Class Members in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

72. The claims of all Class Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by Defendants that caused harm to all Class Members.

73. As such, the class of similarly situated employees is properly defined as follows:

**All current and former "Housing Inspectors" and all workers in substantially similar positions classified as independent contractors during the three year period prior to the filing of this Complaint to the present.**

## VIII.   WAGE DAMAGES SOUGHT

74.     Plaintiff and Class Members are entitled to recover their unpaid overtime premiums for the three years preceding the filing of this complaint to the present. 29 U.S.C. § 216(b).

75.     Plaintiff and Class Members are entitled to recover an equal amount of their unpaid overtime premiums as liquidated damages.  29 U.S.C. § 216(b).

76.     Plaintiff and Class Members are also entitled to recover their attorney's fees and costs, as required by the FLSA.  29 U.S.C. § 216(b).

## X.   PRAYER FOR RELIEF

77.     For these reasons, Plaintiff and Class Members respectfully request that judgment be entered in their favor awarding the following relief:

   a. Overtime compensation for all hours worked in excess of forty (40) per week at the rate of one and one-half times their regular rates of pay;

   b. An equal amount of their unpaid overtime premiums as liquidated damages, as allowed under the FLSA;

   c. Reasonable attorney's fees, costs, and expenses of this action as provided by the FLSA; and

   d. Such other and further relief to which Plaintiff and Class Members may be entitled, both at law or in equity.

        Respectfully submitted,

        KENNEDY HODGES, LLP

        By:____/s/ Don Foty_____
           Don J. Foty
           (Will apply for admission pro hac vice)
           Texas State Bar No. 24050022
           dfoty@kennedyhodges.com
           KENNEDY HODGES, L.L.P.

        4409 Montrose Blvd., Ste. 200
        Houston, TX 77006
        Telephone: (713) 523-0001
        Facsimile: (713) 523-1116

AND

By: /s/ Gabriel A. Assaad
    Gabriel A. Assaad
    Virginia Bar No. 46621
    gassaad@kennedyhodges.com
    KENNEDY HODGES, L.L.P.
    4409 Montrose Blvd., Ste. 200
    Houston, TX 77006
    Telephone: (713) 523-0001
    Facsimile: (713) 523-1116

AND

SHELLIST LAZARZ SLOBIN, LLP

By: */s/ Ricardo J. Prieto*
    Ricardo J. Prieto
    (Will apply for admission pro hac vice)
    Texas Bar: No. 24062947
    rprieto@eeoc.net
    11 Greenway Plaza, Suite 1515
    Houston, Texas 77046
    (713) 621-2277 (Tel)
    (713) 621-0993 (Fax)